UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee under Indenture of Trust between Industrial Development Corporation of Kootenai County and U.S. Bank national Association, as Trustee, dated as of December 1, 2006, relating to $6,365,000 Industrial Development Corporation of Kootenai County Revenue Bonds (AMT), 2006 (Coeur d'Alene Fiber Fuels, Inc. Project) and U.S. BANK NATIONAL ASSOCIATION, a national banking association, as Trustee under Indenture of Trust between Washington Economic Development Finance Authority and U.S. Bank national Association, as Trustee, dated as of September 1, 2007 relating to Washington Economic Development Finance Authority Economic Development Revenue Bonds (Coeur d'Alene Fiber Fuels, Inc. Project) Series 2007G (AMT) - $8,710,000 and Series 2007H (Taxable) - $950,000<br><br>                 Plaintiffs,<br><br>  v.<br><br>ERIC HANSON, an individual; FRED HANSON, an individual; and COEUR D'ALENE FIBER FUELS, INC.<br><br>                 Defendants. | Case No. 2:10-cv-498-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

**REPORT AND RECOMMENDATION - 1**

## INTRODUCTION

There are two motions before the Court: (1) Receiver Lee Katz' Motion for an Order Approving the Sale of Certain Assets by the Receiver (Dkt. 56); and (2) Defendant Coeur d'Alene Fiber Fuels' Emergency Motion for Entry of Order Prohibiting Receiver From Selling or Transferring Non-Receivership Property. (Dkt. 65.) On May 24, 2011, the Court conducted a status conference during which the parties and the Receiver briefly addressed the above motions. Based upon the representations made during the status conference, including the Receiver's representation that none of the property objected to by Coeur d'Alene Fiber Fuels, Inc. (with the exception of one item) would be included in the sale, the Court ordered the Receiver to file a copy of the amended sales agreement as a supplement to its original motion, and ordered the Defendant to file any responsive briefing relating to the amended sales agreement on or before June 11, 2011. (Dkt. 70.)

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Report and Recommendation[1] will be

---

[1] Neither the Defendant nor the Receiver addressed whether the pending motions are dispositive. Defendant's motion for an order prohibiting the Receiver from selling certain assets (Dkt. 65) unquestionably seeks the functional equivalent of "injunctive relief" and therefore is outside the undersigned's authority under 28 U.S.C. § 636(b)(1)(A). While the Receiver's motion presents a closer call, the Court has determined that since the motion necessitates an interpretation of "Receivership Property," it seeks an order establishing the rights and obligations of the parties and therefore is dispositive in nature. *See Bache Halsey Stuart Shields Inc. v. Killop*, 589 F. Supp. 390, 393 (D. Mich. 1984) (if an order "compels or prohibits particular conduct *and* establishes the rights and obligations of the parties," it is the functional equivalent of injunctive relief) (emphasis in original).

issued based on the record without oral argument.

For the reasons set forth below, it is recommended that the Receiver's Motion for an Order Approving the Sale of Certain Assets (Dkt. 56) be granted with respect to all Receivership assets, including the RUF Brick Machine, Model #400, but excluding all other assets identified in the Declaration of Eric Hansen (Dkt. 66.) It is further recommended that Court enter an Order Approving the Sale of Certain Assets by the Receiver, a copy of which is attached to this recommendation. Finally, it is recommended that Defendant's Emergency Motion for Entry of Order Prohibiting Receiver From Selling or Transferring Non-Receivership Property (Dkt. 65) be denied.

## BACKGROUND

This case involves the issuance of development bonds by two public entities in Washington and Idaho[2] for the purpose of financing the costs of acquiring, constructing, and equipping facilities for Coeur d'Alene Fiber Fuels, Inc., which is in the business of converting mill by-products into wood pellets that can serve as a heating source for residential and commercial end users. The bonds totaled more than $15,000,000. U.S. Bank National Association ("U.S. Bank" or the "Indenture Trustee") entered into two separate trust indentures with the Washington and Idaho public entities, in which U.S. Bank is designated the Indenture Trustee for the financial administration of the bonds.

---

[2] The two public entities involved in this case include: the Industrial Development Corporation of Kootenai County, a public corporation organized and existing under the laws of the State of Idaho; and the Washington Economic Development Finance Authority, a public instrumentality of the State of Washington.

**REPORT AND RECOMMENDATION - 3**

Defendant Coeur d'Alene Fiber Fuels, Inc. ("Fiber Fuels") entered into loan agreements with the Washington and Idaho public entities. Defendants Eric Hanson and Fred Hanson provided personal guarantees for payments of principal and interest to the Indenture Trustee under the loan agreement with the Idaho public entity in the event that the revenues generated by Fiber Fuels were insufficient to make the required payments. Fiber Fuels' repayment obligations under the loan agreement with the Idaho public entity also are secured by first priority perfected mortgage liens and security interests on real estate, pursuant to a deed of trust, and other personal property of Fiber Fuels.

The facts leading to the institution of this action are known to the parties and are largely irrelevant to the disposition of the motions pending before the Court. It suffices to say that the revenue generated by Fiber Fuels has been insufficient to make certain debt payments the company owes. As a result, U.S. Bank, as Indenture Trustee, instituted this action to demand payment from Eric Hanson and Fred Hanson as personal guarantors of the loan between Fiber Fuels and the Idaho public entity. The Complaint seeks, among other remedies, the appointment of a receiver to undertake all action necessary to preserve and protect the collateral pledged by Fiber Fuels.

On December 6, 2010, the parties filed a stipulation for the appointment of a receiver. (Dkt. 19.) The Court approved the stipulation and entered the parties' Agreed Order for the Appointment of a Receiver. (Dkt. 23) ("Receivership Order"). The Receivership Order appointed Lee Katz as Receiver for the assets, including real property, of Fiber Fuels that serve as collateral of the Indenture Trustee. Pursuant to the

**REPORT AND RECOMMENDATION - 4**

Receivership Order, the Receiver is vested with the authority to liquidate Receivership Property (which will be defined below), use, sell, lease and maintain Receivership Property in or not in the ordinary course of Fiber Fuels' business. (Dkt. 23.) The above provision of the Receivership Order is subject to the caveat that the Receiver cannot use, sell, lease or maintain any of the Receivership Property that is not in the ordinary course of Fiber Fuels' business without an order from the Court. (Dkt. 23 at 5-6.)

On March 23, 2011, the Receiver filed a Motion for an Order Approving the Sale of Certain Assets, and attached an Asset Purchase Agreement between the Receiver and Pacific Coast Fiber Fuels, LLC. (Dkt. 56.) The Receiver's motion requests an order approving the Asset Purchase Agreement and granting the Receiver the authority to sell the assets, including the real estate and improvements on which Fiber Fuels operated its wood pellet business in Washington and Idaho. (*Id.*) The motion also makes clear that time is of the essence concerning approval of the sale. Pacific Coast Fiber Fuels, LLC intends to operate its own wood pellet manufacturing operations in the locations formally operated by Fiber Fuels. Receiver represents that "[a]ny buyer of the [Receivership Property] would require an early spring closing in order to be in the position to purchase raw material for the wood pellet production season, which is in the spring and summer, and book sales to end users." (Dkt. 56 at 6.)

On April 18, 2011, Fiber Fuels filed a Response to the Receiver's Motion, objecting to various items listed in the Asset Purchase Agreement as non-receivership property. (Dkt. 60.)

**REPORT AND RECOMMENDATION - 5**

The Receiver filed a Reply to Fiber Fuels' objections, arguing that the objections are one example of many instances in which Fiber Fuels has attempted to delay the sale of the Receivership Property. (Dkt. 64.) The Receiver ascribes a rather nefarious purpose to these alleged delay tactics, suggesting that Defendant Eric Hanson has transferred certain assets of Fiber Fuels to another business entity selling wood pellets, and that Mr. Hanson seeks to delay consummation of the sale for the benefit of this other business. The Receiver states that "[i]t appears this competing business is operating with the use of assets belonging to the Defendant but without any corresponding benefit to the creditors of the Defendant." (*Id*. at 3.) In other words, the Receiver represents that Defendant's delay tactics are being used to thwart Pacific Fiber Fuels entry into the market, stifling competition to the benefit to any other company selling wood pellets. (*Id*. "If the Defendant's delay tactics succeed, the Receiver will not be able to sell the assets for anything other than scrap, and the Defendant will have been successful in eliminating a potential competitor to the detriment of the Receiver and the individual benefit of [Eric Hanson].")

On May 11, 2011, Fiber Fuels filed an emergency motion seeking to preclude the sale or transfer of certain property, which Fiber Fuels contends is not receivership property. (Dkt. 65.) Defendant Eric Hanson submitted a Declaration (Dkt. 66) describing the specific items Fiber Fuels contends should not be transferred under the Asset Purchase Agreement. These items include: vehicles and other loading equipment left by Fiber Fuels at the Shelton, Washington facility; certain equipment at the Omak,

**REPORT AND RECOMMENDATION - 6**

Washington facility; certain intellectual property relating to trade names; and equipment located at the Hauser, Idaho facility. Fiber Fuels also objected to the sale of an RUF Brick Machine RUF 400 ("Brick Machine") located at the Hauser facility.

On May 17, 2011, the Receiver filed a Response to Fiber Fuels' emergency motion. (Dkt. 67.) The Receiver's Response states that Pacific Coast Fiber Fuels, LLC, "is willing to modify the Asset Purchase Agreement to exclude all of the disputed assets, except the brick-maker, at the same purchase price so long as the sale is consummated in the near future." (*Id*. at 2.) The Response also argues that the Brick Machine is part of the Receivership Property and should be included as part of the sale.

On May 24, 2011, the Court conducted a Telephonic Status Conference concerning the above motions. During the conference, counsel for the Receiver represented that the terms of an Amended Asset Purchase Agreement had been agreed upon and that the revised terms excluded from the sale all of the items objected to by Fiber Fuels except for the Brick Machine. Counsel for Fiber Fuels represented that he could not speak to whether any of the objections could be withdrawn without first seeing an executed copy of the Amended Asset Purchase Agreement. Based upon the representations of counsel at the status conference, the Court ordered the Receiver to file a copy of the Amended Asset Purchase Agreement on or before May 27, 2011, and for Defendant Fiber Fuels to file any supplemental responsive briefing on or before June 6, 2011. The Receiver filed the Amended Asset Purchase Agreement, as ordered, on May

27. Fiber Fuels did not submit any responsive briefing.[3]

## DISCUSSION

**1.**    *Effect of the Amended Asset Purchase Agreement*

The Amended and Restated Asset Purchase Agreement ("Amended Agreement"), (Dkt. 69-1), contains a provision excluding the following assets from the proposed sale:

> 1.2    Excluded Assets. . . .
>
> (h)    all assets which [Fiber Fuels] alleges do not constitute Receivership Property and which are listed in Exhibits 1-4 of the Declaration of Eric Hanson Re: Property filed in the Litigation (Docket no. 66); provided, however, that the Purchased Assets shall include, subject to entry of the Sale Order, the RUF brick machine, Model #400, which is located at the Hauser facility.

(Dkt. 69-1 at 4.) The Court finds that the above provision renders all but one of Fiber Fuels' objections to the Receiver's Motion Approving the Sale of Certain Assets moot. The only remaining issue is whether the Brick Machine constitutes Receivership Property within the meaning the Receivership Order.

---

[3] The parties to the underlying dispute in this action settled their disputes during a settlement conference on June 2, 2011. (Dkt. 71.) On June 13, 2011, pursuant to Court order, (Dkt. 72), Fiber Fuels filed a Status Report, (Dkt. 73), indicating that the parties have until July 15, 2011, to compile all documents necessary to finalize the settlement agreement and that Defendant should not be required to respond to the Receiver's supplemental filing until after that date. Defense counsel also indicates in the Status Report that he (and counsel for Defendant Eric Hanson) will be out of town and unavailable to work on the case until June 26, 2011. The Court finds that this matter has been delayed long enough, and as stated above, no further briefing or argument is necessary for the disposition of the pending motions.

**REPORT AND RECOMMENDATION - 8**

## 2. *The Brick Machine*

The Receiver only has control over Receivership Property. The Receivership Order defines Receivership Property as the assets that are subject to the liens of the Indenture Trustee.[4] Two documents define the security interests of the Indenture Trustee: the Security Agreement between Coeur d'Alene Fiber Fuels, Inc. and the Industrial Development Corporation of Kootenai County (Dkt. 1-3);[5] and the Deed of Trust. (Dkt. 1-4.)

The Security Agreement conveys a security interest to the Indenture Trustee over the "Collateral" of Defendant Fiber Fuels. "Collateral" is defined in the agreement as "the personal property of [Fiber Fuels] described in Exhibit A attached to this Agreement . . . *together with all accessories and additions thereto* . . . ." (Dkt. 1-3 at 1) (emphasis added). Exhibit A to the Security Agreement lists a number of items that are involved in the processing of the wood pellets, including: "Sprout mills," "Hammermill auger, blower and cyclone," "Robot stacker," "Storage bins and tanks," "Dust collection system," "Material handling system," "Packaging system," "Fuel system," "Baler," and "Dryer and

---

[4] The Receivership Order states that Lee Katz is appointed Receiver "with respect to the collateral described in the Idaho Loan Agreement, Idaho Security Agreement, Idaho Deed of Trust, Idaho UCC Filing, Washington Loan Agreement, Shelton Deed of Trust and Security Agreement and the Omak Washington Security Agreement (all as described in the Verified Complaint), and expressly excluding inventory, accounts receivable and collateral to the extent reserved to and subject to the first lien of INB and as provided in the Intercreditor Agreement . . . which is collectively referred hereinafter as the "Receivership Property." (Dkt. 23 at 2.)

[5] The Security Agreement acknowledges that the Industrial Development Corporation of Kootenai County, which has been referred to as the Idaho public entity in this Report and Recommendation, "has assigned all of its rights, title and interest hereunder to U.S. BANK NATIONAL ASSOCIATION, as Trustee." (Dkt. 1-3 at 1.)

**REPORT AND RECOMMENDATION - 9**

burner system." (*Id*. at 7.) Exhibit A does not specifically list the Brick Machine.

The Receiver submits that the Brick Machine is an "accessor[y]" or "addition" to the listed collateral. The RUF Brick Machine is a large piece of equipment that turns sawdust into wood "bricks" instead of wood pellets, and was added to the existing pellet manufacturing line so that the operator has the option of producing wood bricks or wood pellets. The word "addition" is self defining; in common parlance meaning "something added to something else." Webster's defines "accessory" as "an object or device not essential in itself but adding to the beauty, convenience, or effectiveness of something else." Webster's New Collegiate Dictionary 7 (1981). Fiber Fuels does not present any argument as to how the Brick Machine is neither an "accessory" nor an "addition" to the items listed in the Security Agreement; it simply argues that the Brick Machine is not among the listed items.

Eric Hanson's declaration, (Dkt. 66), states the following concerning the Brick Machine: "Th[e] machine was ordered by Coeur d'Alene Fiber Fuels in the course of constructing the Hauser facility. . . . The machine is integrated into the equipment at Hauser to the extent that there is a cross-feed to supply sawdust to the brick machine. . . . It is probable that monies from the bond proceeds were used to purchase the machine. The brick machine is not attached to the floor but it is attached to some extent to the conveyor system to obtain sawdust from the assembly system." (Dkt. 66 at 5-6.) The Court finds that the Brick Machine falls within the definition of "accessory" as it is used in the Security Agreement; it is a device adding to the convenience or effectiveness of the

**REPORT AND RECOMMENDATION - 10**

conveyor system at the Hauser facility used to convert mill by-products into a composite material (made of wood) that can serve as a heating source for residential and commercial end users. Therefore, the Brick Machine should be considered an asset subject to a lien of the Indenture Trustee.

This conclusion also is supported by the Deed of Trust, which grants a security interest to the Indenture Trustee in certain personal property, defined as "equipment . . . and other articles of personal property now or hereafter owned by [Fiber Fuels], and now or hereafter attached or affixed to the Real Property, together with all accessions, parts, and additions to . . . any such property." (Dkt. 1-4 at 16.) Fiber Fuels does not dispute that the Brick Machine is affixed to the existing equipment. For the same reasons outlined above, the Court finds that the Brick Machine is an accessory or addition to the manufacturing line, which consists of collateral listed in the Security Agreement, and is "personal property" as that phrase is defined in the Deed of Trust.

## RECOMMENDATION

Based on the foregoing, the Court being otherwise fully advised in the premises, IT IS NOW THEREFORE RECOMMENDED that:

1. Receiver's Motion for an Order Approving the Sale of Certain Assets (Dkt. 56) be GRANTED with respect to all Receivership assets, including the RUF Brick Machine, Model #400, but excluding all other assets identified in the Declaration of Eric Hanson (Dkt. 66.)

**REPORT AND RECOMMENDATION - 11**

2. Defendant Coeur d'Alene Fiber Fuels' Emergency Motion for Entry of Order Prohibiting Receiver From Selling or Transferring Non-Receivership Property (Dkt. 65) be DENIED.

IT IS FURTHER RECOMMENDED that the District Judge enter the Proposed Order submitted by the Receiver and which is attached to this Report and Recommendation.

Due to the time constraints applicable in this matter, the Court finds it appropriate to expedite the objection period pursuant to Local Rule 72.1(b)(1). Written objections to this Report and Recommendation must be filed on or before June 30, 2011, and responses, if any, on or before July 7, 2011, or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: June 23, 2011

/s/ Candy W. Dale

Honorable Candy W. Dale
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

_____ )
U.S. BANK NATIONAL ASSOCIATION, a ) Case No. 2:10-cv-00498-EJL
national banking association, as Trustee under )
Indenture of Trust between Industrial Development )
Corporation of Kootenai County and U.S. Bank )
National Association, as Trustee, dated as of )
December 1, 2006, relating to $6,365,000 )
Industrial Development Corporation of Kootenai )
County Revenue Bonds (AMT), 2006 )
(Coeur d'Alene Fiber Fuels, Inc. Project) and )
U.S. BANK NATIONAL ASSOCIATION, a )
national banking association, as Trustee under )
Indenture of Trust between Washington Economic ) **ORDER APPROVING**
Development Finance Authority and U.S. Bank ) **THE SALE OF CERTAIN**
National Association, as Trustee, dated as of ) **ASSETS BY THE**
September 1, 2007 relating to Washington ) **RECEIVER**
Economic Development Finance Authority )
Economic Development Revenue Bonds )
(Coeur d'Alene Fiber Fuels, Inc. Project) Series )
2007G (AMT) - $8,710,000 and )
Series 2007H (Taxable) - $950,000 )
)
Plaintiffs, )
)
vs. )
)
ERIC HANSON, an individual; FRED )
HANSON, an individual; and Coeur d'Alene )
Fiber Fuels, Inc. INLAND NORTHWEST BANK )
)
Defendants. )
)

      This Court, has considered the Motion for Order Approving the Sale of Certain Assets (the "Motion") filed by Lee M. Katz, in his capacity as Receiver (the "Receiver") of certain property of Coeur d'Alene Fiber Fuels, Inc. ("Fiber Fuels" or the "Corporation" (Dkt. No. 56), the Affidavit of Lee Katz (Dkt. No. 59), the Response by Coeur d'Alene Fiber Fuels, Inc., to the Sale Motion (Dkt. 60), the Reply by Receiver (Dkt. 64, 64-1), the Emergency Motion for Entry of

**REPORT AND RECOMMENDATION - 13**

Order Prohibiting Receiver Selling Non-Receivership Property (Dkt. 65), the Response the Emergency Motion by the Receiver and Declaration of Joel Hazel. The original Motion sought, among other things, an order authorizing and directing the sale of certain assets of the Corporation, including the real property upon which its facilities are located, all pursuant to an Asset Purchase Agreement dated March 15, 2011, between the Receiver and Pacific Coast Fiber Fuels, LLC ("PCFF" or the "Buyer"), a copy of which is attached to the Motion as Exhibit A (the "Asset Purchase Agreement"), and approving the process by which such sale is to be accomplished, and the Court having found that sufficient, fair and timely notice was given to all parties entitled to notice of the proposed sale and assignment including, but not limited to, all Potential Claimants (as defined in the Asset Purchase Agreement), by first class U.S. mail and publication of the notice of sale (the "Notice") in the Coeur d'Alene Press and the Shelton-Mason County Journal (See Affidavit of Publication, Dkt. No.61); and the Court having considered the filed objection to the Motion; and the Court having found that the proposed sale is in the best interests of all persons and parties affected thereby, after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1. The Motion is granted with respect to all Receivership assets, including the RUF brick Machine, Model #400. All other assets identified in the Declaration of Eric Hansen (Dkt. No. 66) are excluded from the sale, except the RUF brick Machine, Model #400. The decision to exclude certain assets is without prejudice and the parties may bring motions to determine whether any of the excluded assets are properly Receivership property.

2. The sale of the Purchased Assets (as defined in the Asset Purchase Agreement and modified by this Order) to the Buyer, or its assignee on the terms and conditions of the Asset Purchase Agreement is hereby approved.

**REPORT AND RECOMMENDATION - 14**

3. The Receiver is hereby authorized and directed to consummate the sale of the Purchased Assets to the Buyer as provided in the Amended Asset Purchase Agreement. Subject to and in accordance with the Amended Asset Purchase Agreement, this Order, and with the consent of the plaintiffs in this action (collectively, the "Indenture Trustee"), the Receiver is hereby authorized and directed to deliver the Purchased Assets free and clear of all liens, claim encumbrances and interests of any kind whatsoever that arose, or relate to any time period up to and including the Closing Date (as defined in the Amended Asset Purchase Agreement) (collectively "Claims"). In connection with the sale of real property that is Purchased Assets, the Receiver is authorized and directed to deliver to the Buyer a deed or deeds that convey good and clear record and marketable title as held by the Receiver, free of Claims. All Claims will attach to the proceeds of the sale with the same force, validity and effect which they now have. Neither the Buyer nor any of the Purchased Assets shall be liable for the satisfaction of any of the Claims, and the holder of any Claim shall look only to the proceeds of the Purchased Assets or any property of the Corporation not transferred to the Buyer for the satisfaction of any Claim.

4. Immediately upon the consummation of the sale of the Purchased Assets to the Buyer, the Receiver is directed to distribute to the Indenture Trustee the proceeds of the sale of the Purchased Assets free and clear of any Claims. Such funds shall be paid over to the Indenture Trustee immediately prior to the Receiver transferring the Purchased Assets to the Buyer "free and clear" of the valid, enforceable and properly perfected liens, encumbrances, mortgages and/or security interests held by the Indenture Trustee.

5. The Receiver is hereby authorized and directed to execute any and all documents and to take such further ministerial actions as are necessary or required to consummate the transactions contemplated by the Amended Asset Purchase Agreement without further Order of the Court.

6. The Court finds that the substantial marketing and sales efforts of the Receiver, as set forth in the Motion, provide reasonable assurances that appropriate steps have been taken to sell the Purchased Assets in a commercially reasonable manner for the purpose of maximizing their value. Accordingly, the Court finds that: (a) the price set forth in the Asset Purchase Agreement is fair and reasonable; (b) the sale of the Purchased Assets to the Buyer as provided in the Asset Purchase Agreement is in the best interests of all parties in this proceeding; (c) the sale of the Purchased Assets was fairly conducted in accordance with law; (d) the process for notifying the creditors with a lien interest in any of the Purchased Assets and other parties in interest of the sale was sufficient, fair and timely (including the mailing of notices and the publication of the sale as provided hereinabove) and satisfied all applicable due process standards; (e) all such creditors and parties in interest have been given an opportunity to object to the sale; and (f) adequate and sufficient notice has been provided to unknown and potential or contingent creditors by publication notice.

7. The Court finds that the Amended Asset Purchase Agreement was negotiated, proposed and entered into by the parties in good faith, from arm's length bargaining positions and without collusion, and the Buyer is a good faith purchaser and is entitled to the protections afforded such a purchaser under law.

8. This Court retains jurisdiction: (i) to enforce and implement the terms and provisions of the Amended Asset Purchase Agreement and all amendments thereto, and any waivers and consents thereunder, and any other agreements executed in connection therewith; (ii) to resolve any disputes arising under or related to the Amended Asset Purchase Agreement and any related agreements; (iii) to enjoin the assertion of any Claims or any other encumbrances or liabilities against the Bond Trustee, the Buyer and the Purchased Assets; and (iv) to interpret, implement and enforce the provisions of this Order.

**REPORT AND RECOMMENDATION - 16**